[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action is an appeal by the plaintiff, NERAC, Inc. (NERAC) from the decision of the Commissioner of Revenue Services (Commissioner), that NERAC owes additional sales and use taxes on purchases of computer magnetic tapes and discs for the period of April 1, 1991 through December 31, 1993, and for the period of January 1, 1995 through December 31, 1997.
The parties have stipulated that there are four issues in this case:
 1. Whether the database information conveyed to NERAC in the form of computer magnetic tape constitutes the purchase or lease of tangible personal property or intangible property.
 2. Whether the database agreements constitute the purchase or lease of magazines exempt from taxation under General Statutes § 12-412(6).
 3. Whether royalty fees paid by NERAC for the use of the database information is subject to sales and use CT Page 15738 tax.
 4. Whether NERAC's use of the databases represent exempt sales for resale under General Statutes § 12-407(3).
(See Joint Trial Management Report, p. 6.)
NERAC is a Connecticut corporation that provides technical, scientific and information services to its clients. NERAC is a research company that has access to certain scientific databases of various federal agencies and private third party vendors. It incorporates the data from the federal agencies and thirty-nine other third party vendors into its own databases and provides customers with scientific information needed or requested by searching its own databases. In compiling its databases, NERAC acquires information from federal agencies free of charge and information from private third party vendors requiring the payment of subscription fees, plus royalty fees for specific use of the vendors' databases over and above the subscription fees. NERAC is licensed to use the databases of its vendors during the term of its contracts with the vendors.
NERAC's databases contain approximately 63.2 million items of information. The databases from the federal agencies contains approximately 15.5 million items of information. The thirty-nine private vendor databases contain approximately 47.7 million items of information. During the tax periods in issue, NERAC conducted approximately 7200 retrospective searches of scientific information, and approximately 99,100 current awareness update searches. The information obtained from the federal agencies and the third party vendors is transmitted to NERAC mainly by use of computer magnetic tapes, which contain information only, with no search or application software. The search capability for the information is a function of NERAC's own software. NERAC copies the computer magnetic tape received by the agencies or vendors and transfers the information onto its own magnetic tapes. The original computer magnetic tapes are stored as back-up tapes. If a subscription is terminated, the database has to be returned or NERAC must certify that the database has been destroyed. During the tax periods in issue, NERAC paid $1,672,573 in subscription and royalty fees.
The Commissioner conducted sales and use tax audits for the periods April 1, 1991 through December 31, 1993 and January 1, 1995 through December 31, 1997, and assessed additional "use tax on the purchase or lease of tangible personal property in the form of canned computer software products." NERAC protested the additional assessment of use tax, but the Commissioner denied NERAC's protests, finding the additional CT Page 15739 assessments to be correct.
The Commissioner claims that the purchases by NERAC are taxable as sales of canned computer programs based on information compiled by the vendors and prepared for a general class of users along with the royalty "hit" fees pald by NERAC.
NERAC first claims that the data it purchases from its vendors is not subject to the use tax because the databases were not tangible personal property. We find this issue to be dispositive of this appeal.
General Statutes § 12-411(1) provides, in pertinent part: "An excise tax is hereby imposed on the storage, acceptance, consumption or any other use in this state of tangible personal property purchased from any retailer for storage, acceptance, consumption or any other use in this state. . . ." (Emphasis added.) Tangible personal property is defined as "personal property which may be seen, weighed, measured, felt, or touched or which is in any manner perceptible to the senses, including canned or prewritten computer software." General Statutes § 12-407(13); see Dine Out Tonight Club, Inc. v. Department ofRevenue Services, 210 Conn. 567, 571, 556 A.2d 580 (1989). Canned or prewritten software is defined as "all software, other than custom software, that is held or existing for general or repeated sale, license or lease. Software initially developed as custom software for in-house use and subsequently sold, licensed or leased to unrelated third parties shall be considered canned or prewritten software." General Statutes § 12-407(35).
The Commissioner argues that NERAC purchases computer tapes and disks that by their very nature are only usable on a computer. He argues that the "tapes and disks are clearly software of the computer as they are what is run on the hardware of the computer. . . . That these particular disks contain only information and not programs to instruct the computer to perform other operations on other software makes no difference to the nature of the tapes and disks as software. The term software does not mean only programs that perform functions. Software is anything which runs on the hardware. If it is not . . . (the hardware) then it is software." (Commissioner's July 11, 2001 Memorandum.) The Commissioner cites no authority for this definition of "software."
"Software" is defined as "[t]he programs, routines, and symbolic languages that control the functioning of hardware and direct its operation." American Heritage College Dictionary (Third Ed. 1993), p. 1294. The evidence presented in this case shows that the contents of the magnetic tapes were items of information only, without any programs, routines or symbolic languages that control the functioning of hardware CT Page 15740 and direct its operation. NERAC used its own computer applications, programs and routines to access and search the information after copying the contents of the tapes into its databases. Accordingly, we find that NERAC's subscription and royalty fees were not purchases of "canned or prewritten computer software."
Since we find that the subscription and royalty fees paid by NERAC were not purchases of canned or prewritten computer software, we must determine whether NERAC's purchases of the information on magnetic tapes constituted purchases of tangible personal property. We find that NERAC was interested in obtaining the right to use the information contained on the magnetic tapes, not the magnetic tapes themselves. The subscription prices paid by NERAC to its vendors were not for the specific computer magnetic tapes but rather for the right to access and retrieve the information provided on the magnetic tapes by using NERAC's own search software. The magnetic tapes were used only as vehicles to transport the data from the vendors' databases to NERAC's databases. Instead of transporting the data by magnetic tapes, the vendors could have transferred the data by any number of means, including fascimile, email or in printed form, which would not be as efficient as transferring data from the vendors' tapes to NERAC's tapes.
In Andersen Consulting, LLP v. Gavin, 225 Conn. 498, 526-27, 767 A.2d 692
(2001), the Supreme Court stated: "we have applied the so-called true object test in generally two contexts: (1) where what would otherwise bring the transaction under the purview of the relevant taxing statute is merely incidental to the objective of the transaction . . . and (2) where the applicability of the sales tax depends on the purpose of the sale, which is necessarily a question of intent." (Citations omitted.)
We find that the true object of NERAC's business was to obtain information in the nature of specific scientific articles and data from its vendors for use by its customers. We consider information of this type to be intangible in nature and thus not subject to the sales and use tax. Although the magnetic tapes that carried the data from the vendors to NERAC were tangible personal property, the data itself transmitted from the vendor's database to NERAC's database does not meet the tangible personal property test in Dine Out Tonight Club, Inc. v. Department ofRevenue Services, supra, 210 Conn. 571. The true object of the transactions between NERAC and its vendors was not to purchase the magnetic tapes used to convey the data, but rather to purchase the information contained in the vendors' databases for resale to NERAC's clients. We therefore conclude that the information conveyed to NERAC by means of computer magnetic tapes does not constitute the purchase or lease of tangible personal property subject to the use tax. CT Page 15741
Since we have determined that the information conveyed to NERAC by way of the magnetic tapes is not taxable as "canned or prewritten computer software" or tangible personal property, we need not reach the other arguments set forth by NERAC in support of its position that the subscription fees and royalties paid by NERAC for the information are either not taxable or exempt from taxation.
Judgment may enter in favor of the plaintiff. The plaintiff's appeal is sustained, without costs to either party.
Arnold W. Aronson Judge Trial Referee CT Page 15742 [EDITORS' NOTE: CT Pages 15742 to 15760 are blank.] CT Page 15761